Filed 12/6/21; Modified and certified for publication 1/4/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| JASON CIRRINCIONE, | C092519 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CV-UOE-2018-0004608) |
| v. | |
| AMERICAN SCISSOR LIFT, INC., et al., | |
| Defendants and Respondents. | |

Plaintiff Jason Cirrincione appeals from the order denying class certification in this wage and hour action he filed against his former employer, defendant American Scissor Lift, Inc. (ASL). He contends reversal is required for a number reasons, including that the trial court's ruling rests upon improper merits determinations and incorrect assumptions. We disagree and affirm the order denying class certification.

**BACKGROUND**

We summarize the relevant background and add facts throughout the Discussion section where necessary to resolve the claims raised on appeal.

1

*The Operative Complaint and Class Certification Motion*

ASL is in the business of renting heavy machinery equipment such as scissor lifts and machine booms. It is headquartered in Stockton and has locations in West Sacramento, Stockton, Morgan Hill, and El Cajon. From approximately August 2013 to September 2016, plaintiff worked for ASL in Stockton as a non-exempt, hourly employee. His primary duty was to paint rental equipment; he also welded, sanded, cleaned, assembled, and delivered the equipment. Plaintiff and other hourly employees were eligible for production bonuses each pay period (twice a month), based on the amount of equipment they prepared for rental.

In April 2018, plaintiff filed a class action complaint against ASL and others.[1] The operative complaint, the second amended complaint, was filed in March 2019. It alleged causes of action for failure to pay overtime wages (Lab. Code, §§ 510, 1194[2]; Wage Order No. 16-2001 (Cal. Code Regs., tit. 8, § 11160, subd. 3(A), hereafter Wage Order No. 16), failure to pay minimum wages (§ 1194), failure to provide meal breaks or premium wages in lieu thereof (§§ 226.7, 512; Wage Order No. 16, subd. 10(A), (B) & (F)), failure to provide rest breaks or premium wages in lieu thereof (§ 226.7; Wage Order No. 16, subd. 11(A), (D)), waiting time penalties (§§ 201-203), failure to pay reimbursement expenses (§ 2802), and unfair competition (Bus. & Prof. Code, § 17200). Plaintiff purported to represent as many as 50 similarly situated former and current employees of ASL.

---

[1]  Plaintiff also brought suit against Sacramento Scissor Lift, Inc. (SSL) and Michael Melthratter. Pursuant to stipulation, SSL was dismissed from this action shortly after the class certification motion was filed. At all relevant times, Melthratter was the chief executive officer and president of ASL.

[2]  Undesignated statutory references are to the Labor Code.

The relevant claims alleged in the operative complaint are predicated on ASL's policy and/or practice of rounding the work time of its employees (which allegedly resulted in the systematic underpayment of wages), and ASL's failure to: 1) provide meal breaks or pay premium wages in lieu thereof; 2) authorize or permit employees to take rest breaks or pay premium wages in lieu thereof; 3) timely pay its employees all unpaid wages due at termination or resignation; and 4) reimburse employees for using their personal cell phones, vehicles, and tools for work purposes.

In October 2019, plaintiff moved for class certification. He sought to certify a class or seven subclasses, including a rounding subclass, two meal break subclasses, two rest break subclasses, a no reimbursement subclass, and a final wage subclass. The proposed subclasses consisted of all non-exempt, hourly employees currently or formerly employed by ASL from April 20, 2014, or April 20, 2015 until the date of class certification. The meal and rest break subclasses limited membership in the class to employees who worked a certain number of hours per day. For example, the first meal break subclass was limited to employees who worked more than five hours in a day and the second meal break subclass was limited to employees who worked more than 10 hours in a day.

In support of his class certification motion, plaintiff asserted that "[t]here are at least 54 putative class members falling within the defined class," although he did not specify how many of these individuals were in each of the seven proposed subclasses. Plaintiff sought class certification based on the following theories of liability: 1) "ASL . . . engaged in unlawful rounding of employees' hours worked because it did not have any rounding policy and the net effect of its rounding resulted in the systematic underpayment of wages"; 2) "ASL failed to authorize and permit meal and rest periods by failing to adopt compliant meal and rest period policies, resulting in unpaid meal and rest period premiums"; and 3) "ASL failed to reimburse employees for the use of their personal tools and cell phones by failing to adopt any policy allowing for employees to

3

submit expenses for reimbursement." Plaintiff asserted that ASL's conduct also resulted in derivative liability for waiting time penalties and unfair competition, and that those claims would "satisfy the commonality and predominance requirements to the same extent as the claims they are based on." He argued that class certification was warranted because "[t]he focus of this case is on ASL's actions in that it failed to adopt compliant policies, which resulted in unpaid wages, unreimbursed expenses, penalties, and interest." He added that "[t]he lawfulness of ASL's policies (or lack thereof) is what is being litigated in this action," which are " 'the sort routinely, and properly, found suitable for class treatment.' "

ASL opposed the motion, arguing that plaintiff failed to carry his burden to establish the requirements for class certification, including the well-defined community of interest requirement. Among other things, ASL argued that common questions of law and/or fact did not predominate over individual issues because its decisionmaking process was decentralized (each branch location was run by the managers at that location), it had no uniform company-wide policies or practices related to the proposed subclasses (e.g., rounding policy or practice) but the managers at each branch location "followed the law," and the applicable IWC wage order was posted at each branch location, in the employee break room or near the time card clock.

*The Trial Court's Ruling*

After a hearing, the trial court issued a written order denying plaintiff's motion for class certification in July 2020. The court concluded that class certification was not warranted because plaintiff had failed to establish that common questions of fact or law would predominate over individual questions, or that plaintiff's claims were typical of those of the proposed subclasses. The court provided no analysis of the typicality requirement, but focused on the predominance requirement, as we detail *post*. As for the class certification requirements of ascertainability and numerosity, the court stated: "Plaintiff defines his subclasses according to objectively identifiable characteristics, and

4

employees would be able to self-identify according to those definitions. Plaintiff has provided some evidence of numerosity, but only as to the overall number of [ASL's] employees. Plaintiff did not undertake to provide evidence of numerosity as to each sub-class." The court, however, did not expressly deny class certification on the basis that plaintiff failed to carry his burden to show numerosity as to any of the proposed subclasses. Instead, it found that ASL's arguments regarding ascertainability and numerosity were "essentially arguments that individual questions predominate over common questions." As we review the trial court's *actual reasons* for denying class certification, no further discussion of these class certification requirements is warranted.[3] (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435-436; *Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 939.)

As for the proposed rounding subclass, the trial court began its analysis by noting that an employer's practice of rounding an employees' work time is not a violation of California law, so long as the rounding is done in a fair and neutral manner that does not result in under compensation over a period of time, such as a policy or practice that encompasses only rounding time down. The court rejected plaintiff's contention that an employer's practice of rounding work time in the absence of a uniform, written rounding policy is a violation of California law, finding that plaintiff had failed to support his position with any case law. The court also rejected plaintiff's contention that any underpayment of wages resulting from ASL's rounding practice could be accomplished by simply reviewing payroll records, explaining that his claim was belied by his own

---

[3] For the same reason, we do not discuss the typicality requirement, although we recognize that California courts have held that even if the trial court's order on class certification does not state reasons, or does so without providing detail, it will be deemed sufficient for review purposes so long as the basis for the court's ruling may be discerned from the record. (See, e.g., *Dailey v. Sears, Roebuck & Co.* (2013) 214 Cal.App.4th 974, 986-987 [concluding that the trial court's "succinct" order, elucidated by the parties' briefing and oral argument was sufficient to permit meaningful appellate review].)

evidence. The court noted that the timecard evidence submitted by plaintiff did not show clock-in or clock-out times for meal periods, and that while plaintiff submitted declarations from several employees indicating they frequently missed meal periods, none of those employees stated that they missed their meal period every day. The court explained that answering the question of whether an employee took a meal break on the days when their hours were rounded was key to determining whether ASL's rounding practice resulted in underpayment of wages and would appear to vary from employee to employee and day to day, and could not be accomplished by mere resort to payroll records because, in at least some cases if not all cases, the payroll records did not show whether meal periods were taken. The court added that the evidence submitted by ASL showed that its rounding practice varied from location to location and supervisor to supervisor. For example, a supervisor at the Morgan Hill branch rounded clock-in and clock-out times up or down to the nearest quarter hour, whereas supervisors at the El Cajon branch and West Sacramento branches always rounded time up in favor of the employees, with the El Cajon supervisor rounding the total hours worked to the nearest half hour and the West Sacramento supervisor rounding both clock-in and clock-out times, not total hours worked. Finally, the court noted that each of ASL's four branch locations was currently using an electronic timekeeping system, TSheets, but that the date of implementation of the system varied among the branches (e.g., early 2018, around June 2017, September 2019) and within one branch, and that supervisors at two of the branches continued to round time after the implementation of TSheets, with one supervisor rounding total hours worked in a day and another rounding total hours worked in a pay period.

Under these circumstances, the trial court concluded that plaintiff's rounding claim was not suitable for class treatment. It stated: "Because of the varying practices at each location, compounded by the varying timeframes for the adoption of the TSheets software, it is impossible to determine whether [ASL's] rounding practices resulted in

6

underpayment of employees as a group over time without a predominance of individual inquiries.  At the least, the court would need to evaluate each branch location on its own, and further dissect the inquiry according to the time before and after TSheets was implemented at that location. . . .  [I]t would also be necessary to determine when employees took meal breaks that are not reflected on timecards or in TSheets."

As for the proposed meal and rest break subclasses, the trial court initially noted that ASL had submitted evidence indicating that each of its branch locations displayed the applicable IWC Wage Order setting forth an employee's rights to meal and rest breaks, and that some supervisors gave additional verbal or written instructions about the use of breaks, which were similar but not identical, while some supervisors gave no additional instructions.  The court also noted that changes in ASL's practices during the class period "compound the problem"; ASL did not track meal breaks before approximately March 2018, rather it simply assumed that employees took their breaks prior to that date.  In concluding that plaintiff's proposed meal and rest period claims were not suitable for class treatment, the court found that a determination of liability would require an individualized inquiry as to what each employee was told about their meal and rest breaks in addition to the information that was set forth in the IWC Wage Order at the branch location where they worked.  The court further found that the issue of waiver was relevant to the meal and rest break claims, and that an individual inquiry would be necessary, at least for the time period prior to March 2018, to determine whether each employee took their meal and rest breaks and why they did so.

As for the proposed reimbursement subclass, the trial court concluded that plaintiff's reimbursement claim was not suitable for class treatment, finding that individual issues would predominate as ASL did not have a uniform reimbursement policy and ASL's reimbursement practices varied by branch location and the type of

7

work performed by employees.[4]  Finally, the court found that plaintiff's derivative claims were not suitable for class treatment for the reasons stated in denying certification as to his other claims.

Plaintiff timely appealed from the order denying class certification.  The case was fully briefed on July 23, 2021, and was assigned to this panel on September 28, 2021.

## DISCUSSION

### I

*Standard of Review and Class Certification*

Code of Civil Procedure section 382 authorizes a class action "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ."  Our Supreme court has "articulated clear requirements for the certification of a class.  The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives.  [Citations.]  'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' " (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).  Our high court has described the proper standard of review from an order on a class certification motion as follows:  "We review the trial court's ruling for abuse of discretion and generally will not disturb it ' "unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions." ' [Citation.]  We review the trial court's actual reasons for granting or

---

[4]  Because plaintiff does not challenge this aspect of the trial court's ruling, no further discussion of the proposed reimbursement subclass is necessary.

8

denying certification; if they are erroneous, we must reverse, whether or not other reasons not relied upon might have supported the ruling." (*Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 530 (*Ayala*).)[5]

One valid reason for denying certification is sufficient. (*Sav-On Drugs Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 327 (*Sav-On*) ; *Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 143.)

Predominance is the primary class certification requirement at issue in this case. The ultimate question in determining whether the predominance requirement has been met is whether " 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] The answer hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' [Citation.] A court must examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible." (*Brinker, supra,* 53 Cal.4th at pp. 1021-1022, fn. omitted; see *Ayala, supra*, 59 Cal.4th at p. 530 [the question at the class certification stage is "whether the operative legal principles, as applied to the facts of the case, render the claims susceptible to resolution on a common basis"].) "[T]he focus in a certification dispute is on what type of questions—common or individual—are likely to arise in the action." (*Sav-On, supra*, 34 Cal.4th at p. 327.)

---

[5] This standard of review "presents an exception to the general rule that a reviewing court will look to the trial court's result, not its rationale." (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 314(3), p. 432.)

9

" 'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' " (*Brinker, supra,* 53 Cal.4th at p. 1022.)  However, "class treatment is not appropriate 'if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover following the "class judgment" ' on common issues." (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 28 (*Duran*).)  " 'Only in an extraordinary situation would a class action be justified where, subsequent to the class judgment, the members would be required to individually prove not only damages but also liability.' " (*Id.* at p. 30.)

"The certification question is 'essentially a procedural one that does not ask whether an action is legally or factually meritorious.' " (*Sav-On, supra*, 34 Cal.4th at p. 326.)  But this does not mean the trial court always must ignore the merits of the case: "A class certification motion is not a license for a free-floating inquiry into the validity of the complaint's allegations; rather, resolution of disputes over the merits of a case generally must be postponed until after class certification has been decided [citation], with the court assuming for purposes of the certification motion that any claims have merit [citation].  [¶]  We have recognized, however, that 'issues affecting the merits of a case may be enmeshed with class action requirements . . . .' [Citations.]  When evidence or legal issues germane to the certification question bear as well on aspects of the merits, a court may properly evaluate them.  [Citations.]  The rule is that a court may 'consider[] how various claims and defenses relate and may affect the course of the litigation' even though such 'considerations . . . may overlap the case's merits.' [Citations.]  [¶]  In particular, whether common or individual questions predominate will often depend upon resolution of issues closely tied to the merits." (*Brinker, supra*, 53 Cal.4th at pp. 1023-1024.)  That is because a court must determine "whether the elements necessary to establish liability are susceptible of common proof." (*Id.* at p. 1024.)

10

Stated another way, "a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate. To the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them." (*Brinker, supra*, 53 Cal.4th at p. 1025.)

Because predominance is a factual issue, the trial court's finding that individual issues predominate must be affirmed if it is supported by substantial evidence. (*Brinker, supra*, 53 Cal.4th at p. 1022.) Under the substantial evidence standard, we " 'must [p]resum[e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce from the record . . . .' " (*Ibid.*) An inference is reasonable if it is a product of logic and reason and rests on the evidence. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632-1633.)

II

*Rounding Subclass*

Plaintiff contends the trial court erred in concluding that his rounding claim is not suitable for class treatment because the evidence presented showed that ASL had a practice of rounding employee work time but no written rounding policy. He argues that such a showing was sufficient to justify class treatment, and that the trial court improperly relied on a merits determination in denying class certification and erred in determining that a rounding practice without a uniform, written rounding policy is not a violation of California law. Plaintiff adds that reversal is required because the ruling rests on improper assumptions. We see no basis for reversal.[6]

---

[6] Plaintiff also asserts that the trial court's order denying class certification is not supported by substantial evidence. However, he has not pointed to any specific findings that are unsupported by substantial evidence or developed any legal argument to support this claim of error. When, as here, an appellant raises a claim of error but fails to support

11

In determining the propriety of certifying the proposed rounding subclass, the trial court began its analysis by discussing the substantive law governing plaintiff's rounding claim. This was proper. (See *Ayala, supra*, 59 Cal.4th at p. 530 ["We begin by identifying the principal legal issues and examining the substantive law that will govern"]; *Duran, supra*, 59 Cal.4th at p. 34 ["Class Actions are provided only as a means to enforce substantive law"]; *id.*, at p. 51 (conc. opn. of Liu, J.) [in determining whether class certification is appropriate, "it is important that courts employ a proper understanding of the substantive governing law"].) In order to determine whether common or individual questions of law and fact predominate the trial court " 'must examine the issues framed by the pleadings and the law applicable to the causes of action alleged' " and decide "whether the elements necessary to establish liability are susceptible of common proof or, if not, whether there are ways to manage effectively proof of any elements that may require individualized evidence." (*Brinker, supra*, 53 Cal.4th at p. 1024.) As our Supreme Court has explained, "a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate. To the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them." (*Id.* at p. 1025.)

In the operative complaint, plaintiff alleged that ASL had an unlawful unwritten policy and/or practice of rounding employees' work time that was not neutral on its face or applied, which resulted in the "vast underpayment of wages" in violation of the Labor Code. In his class certification motion, plaintiff asserted that his theory of liability as to his rounding claim was that ASL "engaged in unlawful rounding of employees' hours worked because it did not have any rounding policy and the net effect of its rounding

---

it with reasoned argument and citation to authority, we treat the contention as waived. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.)

resulted in the systematic underpayment of wages." He identified several common questions of fact and law relevant to this claim, including whether ASL rounded employees' work time, whether ASL had a rounding policy, whether any rounding resulted in a failure to compensate employees for all the time they worked, and whether it is lawful for an employer to round employee work time without an actual policy permitting such conduct. In his reply brief, plaintiff asserted, "Whether or not ASL had a rounding policy and whether or not ASL engaged in rounding of employees' hours worked are certification issues, the answers to which have the ability to determine liability on a class wide basis." He stated, "Under [p]laintiff's theory of liability, the failure to have a rounding policy creates liability. . . . Thus, this raises a purely legal question with the power to resolve the claims of numerous individuals with a simple yes or no answer." He added, "Similarly, the determination of whether the rounding of employees time resulted, over a period of time, in the failure to compensate the employee for all time actually worked, is a matter that can be summarily resolved by reference to employee time record to determine what was actually worked versus what was paid and then whether that difference is sufficient to establish liability."

In view of the issues framed by the operative pleading and the class certification briefing, we see nothing inappropriate in the trial court's rejection of plaintiff's unsupported assertion that an employer's practice of rounding employees' work time violates California law in the absence of a uniform, written rounding policy. Plaintiff has not cited, and we are not aware of, any authority demonstrating that the trial court improperly articulated the substantive law governing plaintiff's rounding claim. As the court correctly observed, an employer in California is entitled to round its employees' work time if the rounding is done in a "fair and neutral" manner that does not result, over a period in time, in the failure to properly compensate employees for all the time they have actually worked. (*See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 907; see also *Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829,

847.) Under this standard, an employer's rounding policy or practice is "fair and neutral" if " 'on average, [it] favors neither overpayment nor underpayment' "; but such a policy or practice is unacceptable if it " 'systematically undercompensate[s] employees' " because it " 'encompasses only rounding down.' " (*See's Candy Shops, Inc.,* at pp. 901-902, 907.) There is nothing in *See's Candy Shops, Inc.* (or any other case we are aware of) supporting the proposition that the absence of a written rounding policy constitutes a violation of California law where an employer has a practice of rounding its employees' work time. In short, plaintiff's purported theory of liability is not a recognized theory of liability. Contrary to plaintiff's contention, the trial court did not improperly decide the merits of a disputed issue in refusing to certify the proposed rounding subclass. Instead, in determining whether common issues predominate, the court properly considered the governing substantive law enmeshed with class action requirements.

We need not decide whether the trial court's ruling rested, in part, on erroneous assumptions related to meal breaks as plaintiff claims, because the record reflects that the court determined that the rounding claim was not suitable for class treatment due to the predominance of individual issues unrelated to meal breaks. The trial court need only state one valid reason for denying certification. (*Sav-On, supra,* 34 Cal.4th at p. 327; see also *Kaldenbach v. Mutual of Omaha Life Ins. Co*. (2009) 178 Cal.App.4th 830, 844 [we may not reverse simply because some of the court's reasoning was faulty, so long as any of the stated reasons are sufficient to justify the order].) The evidence presented in connection with the class certification motion showed that ASL did not have a uniform, written policy or a consistently applied company-wide practice of rounding work time, but rather a rounding practice that varied among its four branch locations. Indeed, it is undisputed that ASL had "no policy to round time card entries," and that ASL's supervisors "were not given any training by ASL on how, or under what circumstances, they could lawfully round an employee's hours worked, relying instead on their own personal views and experiences inform what actions they would take" in rounding

14

employees' work time. The evidence also showed that, during the proposed class period, each of ASL's four branch locations implemented an electronic timekeeping system (TSheets) at various times, and some supervisors continued to round work time thereafter while other supervisors did not. The trial court's order clearly reflects that these were the primary reasons for the denial of class certification as to plaintiff's proposed rounding subclass and that individualized issues related to meal periods was an additional reason supporting denial.

Finally, we reject plaintiff's contention that reversal is required because the trial court's ruling was not based on his theory of recovery, which was not predicated on a location-by-location review of ASL's rounding practices, and because the ruling was inconsistent with how rounding claims are properly analyzed. In support of his position, plaintiff relies on *AHMC Healthcare, Inc. v. Superior Court* (2018) 24 Cal.App.5th 1014. However, unlike here, *AHMC* involved a uniform rounding policy that was applied via an electronic payroll system, which automatically rounded all employees time up or down to the nearest quarter of an hour. (*Id*. at pp. 1016-1017, 1027.) The determination of whether the rounding policy was lawful in that case was based on data compiled from time records. (*Id*. at p. 1018.)

Nothing in *AHMC Healthcare, Inc.* persuades us that reversal is required under the circumstances of this case. Plaintiff offers no authority supporting his suggestion that the trial court was required to ignore the evidence presented and accept his position that liability on a class-wide basis could be proved through the lack of a uniform, written rounding policy and the examination of timecard and payroll records. "In the wage and hour context, courts routinely have found suitable for class treatment a claim alleging an employer consistently applied a uniform policy that harmed an identifiable class of employees when the policy *and the harm it caused* are subject to common proof for all class members. [Citation.] To obtain certification of such a class, the class proponent must "present substantial evidence that proving *both* the existence of [the employer's]

15

uniform policies and practices *and* the alleged illegal effects of [the employer's] conduct could be accomplished efficiently and manageably within a class setting." (*Kizer v. Tristar Risk Management* (2017) 13 Cal.App.5th 830, 842.) In cases where there is conflicting evidence as to whether there is a uniform policy or practice and the impact such a policy or practice had on the proposed class members, a trial court may weigh the evidence for the "purpose of determining whether the record sufficiently supported the existence of predominant common issues provable with classwide evidence, such that ' "the maintenance of a class action would be advantageous to the judicial process and to the litigants." ' " (*Dailey v. Sears, Roebuck & Co.*, *supra*, 214 Cal.App.4th at p. 991; see also *Mies v. Sephora U.S.A., Inc.* (2015) 234 Cal.App.4th 967, 981 [if the evidence is conflicting on the issue of whether common or individual questions predominate, the trial court is permitted to credit one party's evidence over the other's in determining whether the requirements for class certification have been met].)

Here, as we have explained, the evidence showed that ASL did not have a uniform, written rounding policy or a company-wide rounding practice that was consistently applied at its four branch locations during the proposed class period, and plaintiff failed to present substantial evidence demonstrating that the alleged illegal effects of ASL's rounding practice (i.e., the harm caused by the practice) could be established efficiently through resort to common proof for all class members. Simply alleging the existence of a uniform policy or practice (or unlawful lack of a policy) is not enough to establish predominance of common questions required for class certification. (*Cruz v. Sun World Internat., LLC* (2015) 243 Cal.App.4th 367, 384, disapproved on another ground as stated in *Noel v. Thrifty Payless, Inc*. (2019) 7 Cal.5th 955, 986, fn. 15.) The alleged unlawful policy (or unlawful lack of a policy) must be a means to establish liability on a class-wide basis. (*Payton v. CSI Electrical Contractors, Inc.* (2018) 27 Cal.App.5th 832, 843.) A plaintiff's theory of common proof "must have a foundation in the evidence." (*Id.* at p. 842.)

# III

## *Meal and Rest Break Subclasses*

Plaintiff contends reversal is required because the trial court improperly analyzed the propriety of class certification as to his meal and rest break subclasses under a "failure to relieve theory" rather than a "failure to authorize theory." Plaintiff additionally contends that the trial court improperly relied on a merits determination in denying class certification. Finally, defendant contends the trial court erred in assuming that time records were insufficient to establish a prima facie case of liability. We see no basis for reversal.

### A. *Legal Principles*

Meal and rest break rules are contained in wage orders issued by the IWC. The wage orders are issued on an industry-by-industry basis. (*Brinker, supra*, 53 Cal.4th at p. 1018, fn. 1.) It is not disputed that Wage Order No. 16 governs ASL's obligation to provide meal and rest breaks to its employees.

"State law obligates employers to afford their nonexempt employees meal periods . . . during the workday." (*Brinker, supra*, 53 Cal.4th at p. 1018; Wage Order No. 16, subd. 10.) Generally, an employer must provide an employee "a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of an employee's 10th hour of work." (*Brinker*, at p. 1041; Wage Order No. 16, subd. 10(A), (B).)

"Proof an employer had knowledge of employees working through meal periods will not alone subject the employer to liability for premium pay; employees cannot manipulate the flexibility granted them by employers to use their breaks as they see fit to generate such liability. On the other hand, an employer may not . . . pressur[e] employees to perform their duties in ways that omit breaks." (*Brinker, supra*, 53 Cal.4th at p. 1040.) Under *Brinker*, an employer satisfies its obligation to provide meal periods "if it relieves its employees of all duty, relinquishes control over their activities and

17

permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." (*Ibid.*)  Our Supreme Court has emphasized that "[w]hat will suffice may vary from industry to industry, and we cannot in the context of this class certification proceeding delineate the full range of approaches that in each instance might be sufficient to satisfy the law." (*Ibid.*)

An "employer is not obligated to police meal breaks and ensure no work thereafter is performed.  Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay . . . ." (*Brinker*, *supra*, 53 Cal.4th at pp. 1040-1041.)  "A missed meal break does not constitute a violation if the employee waived the meal break, or otherwise voluntarily shortened or postponed it." (*Lampe v. Queen of the Valley Medical Center* (2018) 19 Cal.App.5th 832, 851.)

"State law [also] obligates employers to afford their nonexempt employees . . . rest periods during the workday." (*Brinker, supra*, 53 Cal.4th at p. 1018; Wage Order No. 16, subd. 11.)  An employer must " 'authorize and permit all employees to take rest periods' " at the rate of 10 minutes of rest for each four hours the employee works " 'or major fraction thereof.' " (*Brinker*, at p. 1028; Wage Order No. 16, subd. 11(A).)

"If an employer fails to provide an employee [the required] meal or rest or recovery period . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." (§ 226.7, subd. (c) ; Wage Order No. 16, subds. 10(F), 11(D).)  An employer must keep accurate records of meal, but not rest, breaks.  (Wage Order No. 16, subd. 6(A)(1).)  An employer governed by Wage Order No. 16 must keep a copy of the order "posted in area frequented by employees where it may be easily read during the workday." (Wage Order No. 16, subd. (20).)

18

B. *Additional Background*

In the operative complaint, plaintiff alleged that ASL failed to provide employees all meal and rest breaks, which was largely due to the scope of work required and ASL's policy of incentivizing the completion of more work, and that ASL failed to properly compensate employees when they missed their breaks. Plaintiff alleged that ASL did not have any written policies and did not provide any instructions to employees concerning meal or rest breaks, but instead required them to work without taking all their breaks. The meal break claim was predicated on a failure to provide theory, whereas the rest break claim was predicated on a failure to authorize and permit theory. In his class certification motion, plaintiff stated that his theory of liability as to his meal and rest break claims was that "ASL failed to authorize and permit meal and rest periods by failing to adopt compliant meal and rest period policies, resulting in unpaid meal and rest period premiums." He identified one common question of fact and one common question of law as to his meal and rest break claims: whether ASL had a policy authorizing meal and rest breaks, and whether an employer violates meal and rest break requirements by failing to adopt a policy authorizing them to be taken by employees. He argued that "[a] finding that ASL failed to adopt a lawful policy authorizing meal and rest periods will establish liability on a class wide basis."

The evidence presented in connection with the class certification motion showed that ASL neither had a formal written policy authorizing or permitting meal or rest breaks nor maintained any records reflecting when or whether employees took meal breaks before implementation of TSheets, but rather assumed employees took their breaks. The evidence further showed that TSheets was implemented at each of ASL's branch locations on different dates and employees clocked out for meal breaks after TSheets' implementation. ASL submitted declarations indicating that supervisors at the West Sacramento, Morgan Hill, and El Cajon branches told employees during the proposed class period that they were authorized and permitted to take two paid 10 or 15 minute

19

breaks during a typical eight-hour day, generally in the morning and afternoon, and a 30-minute unpaid meal period in the middle of a typical eight-hour shift, generally in the middle of the day. As for the Stockton location, there was evidence that employees regularly took a meal break of at least 30-minutes in the office of a supervisor during the class period, and that the same supervisor reminded employees to take a meal break if he noticed they had not taken a break within three to four hours of starting their shift. There was also evidence that the applicable IWC Wage Order concerning meal and rest breaks was posted at each of ASL's branch locations in the break room or near the employee timecards, that supervisors never told employees that they could not take breaks or that they should continue to work through their breaks, and that employees could take breaks whenever they wanted to. ASL also submitted declarations from two proposed class members (one who worked in West Sacramento and one who worked in El Cajon), both of whom stated that they regularly took their rest and meal breaks and saw other employees take breaks. While plaintiff submitted declarations from several proposed class members[7] stating in nearly identical language that there were numerous occasions when they were unable to take their meal and rest breaks or an entire 30-minute meal break due to the amount of work ASL expected them to complete,[8] none of those individuals stated that their supervisors did not inform them of their right to take meal and rest breaks during a typical eight-hour shift or that they were otherwise unaware of their right to do so. Nor did any of the employees state that they missed their meal and rest breaks every day, or that when they missed these breaks, it was ASL's decision

---

[7] Plaintiff submitted five declarations from proposed class members, including his own and a declaration from one employee from each of the branch locations.

[8] Each of the declarants also stated that they did not receive a second meal break or third rest break when they worked more than 10 hours, they were unaware that they were entitled to such breaks, and they never received compensation for missed breaks.

rather than their own. Notably, there was evidence showing that a supervisor at the El Cajon location began providing certain employees (mechanics) with a written "policy" summarizing meal and rest break rules in 2017, and that one of plaintiff's declarants signed this document in July 2018. There was also evidence (a declaration from a proposed class member) indicating that plaintiff regularly took meal and rest breaks during the class period.

In denying class certification as to plaintiff's proposed meal and rest break subclasses, the trial court stated: "[D]etermination of these claims on a class-wide basis would require inquiry as to what each employee was told in addition to what was set forth in the IWC wage order. Moreover, the issue of waiver is also relevant to these claims, and an individual inquiry would be necessary, at least prior to March 2018,[9] to establish whether each employee actually took their breaks and why." (Footnote added.)

C. *Analysis*

We disagree with plaintiff's initial contention that reversal is required because the trial court improperly assessed the propriety of class certification under the wrong theory of liability. As we have noted, plaintiff's theory was based on ASL's "fail[ure] to authorize and permit meal and rest periods by failing to adopt compliant meal and rest period policies, resulting in unpaid meal and rest period premiums." The record reflects that the court understood this theory, but determined that class certification was not warranted due to the predominance of individual issues.

Nor was ASL's mere failure to adopt a written, uniform meal and rest break policy sufficient to justify class certification. While some courts have held in the wage and hour

---

[9] As we have noted, the record reflects that ASL employees began clocking out for meal breaks at different times during the proposed class period; employees at the Stockton location began doing so around March 2018, while employees at the El Cajon branch began doing so as early as June 2017.

21

context that the *absence* of a uniform policy supports certification if such a policy is required by law (see, e.g., *Benton v. Telecom Network Specialists, Inc.* (2013) 220 Cal.App.4th 701, 724-725 [failure to adopt policy authorizing meal and rest breaks]; *Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129, 1150-1151 [same]) , our Supreme Court has yet to decide this question (see *Duran*, *supra*, 59 Cal.4th at p. 31, fn. 28.)[10] Plaintiff provides no discussion of *Benton* or *Bradley* and neither case stands for the general proposition that a lack of a uniform, written meal and break policy justifies certification, regardless of the circumstances presented. Indeed, the existence of a uniform policy (or lack of such) does not end the inquiry as to whether a proposed class is suitable for class treatment in meal and rest break cases. A plaintiff must establish that their theory of legal liability can be resolved on a class-wide basis through common facts and law. (See *Koval v. Pacific Bell Telephone Co*. (2014) 232 CalApp.4th 1050, 1060-1063 [existence of written, uniform rest and meal break policies insufficient to support certification where supervisors differed in how they implemented policies].) While the *Brinker* court observed that "a uniform policy consistently applied" *can* support class certification, (*Brinker, supra*, 53 Cal.4th at p. 1033) it did not say that a wage and hour claim *must* proceed as a class action when it involves a uniform policy. As *Brinker* instructs: "Presented with a class certification motion, a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate." (*Id*. at p. 1025.) The record reflects that the trial court adhered to these principles and found that class certification was not warranted due to the predominance of individual issues. We

---

[10] We note that a federal district court has concluded that the failure to adopt a meal and break policy consistent with California law is not a violation of the law. (See *Cole v. CRST, Inc*. (C.D.Cal. 2016) 317 F.R.D. 141, 144 [finding that an employer's only affirmative obligation is to notify employees of meal and rest break rules, which was fulfilled by posting of rules at jobsite].)

see no abuse of discretion; the evidence did not show a uniform policy or practice consistently applied to all employees.

Plaintiff adds that by assessing certification solely from a "failure to relieve" theory the trial court made an "inherent merits determination" that ASL was not required to adopt any formal policy authorizing meal and rest periods in order to comply with its legal obligation to provide such breaks. We disagree that the court made a legal determination as to merits; rather, as we have explained, it found that class certification was improper due to the predominance of individual issues.

Lastly, we find no merit in plaintiff's contention that reversal is required because the trial court incorrectly assumed that time records showing no meal periods were taken, or non-compliant meal periods, are insufficient to establish a prima facie case of liability. Where an employer fails to provide time records showing that a meal break was taken, a rebuttable presumption arises that the employee was not offered such a break. In that case, an employer's claim that a break was in fact offered but the employee declined it, is an affirmative defense that the employer must prove. (See *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 74-76 [explaining that "waiver" in this context means that an employee chose to work when he or she was not required to].) Here, the court determined that individual issues arising from ASL's affirmative defense of waiver and other factors precluded certification. That decision was within the court's discretion. (See *Duran*, *supra*, 59 Cal.4th at pp. 28-29 ["In certifying a class action, the court must also conclude that litigation of individual issues, including those arising from affirmative defenses, can be managed fairly and efficiently"].)

Because we find no reversible error with respect to plaintiff's rounding claim and meal and rest break claims, there is no basis to reverse as to his derivative claims, and we need not consider the parties' remaining arguments.

23

## DISPOSITION

The order denying class certification is affirmed.  ASL is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

                                                /s/
Duarte, J.

We concur:

        /s/
Blease, Acting P. J.

        /s/
Robie, J.

24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| JASON CIRRINCIONE, | C092519 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CV-UOE-2018-0004608) |
| v. | |
| AMERICAN SCISSOR LIFT, INC., et al., | ORDER GRANTING PUBLICATION AND MODIFICATION OF OPINION |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

THE COURT:

Defendants and respondents American Scissor Lift, Inc., and Michael Melthratter filed a request for publication with this court. The request to publish included a request to correct a typographical error. It is hereby ordered:

1.     The opinion in the above-entitled matter filed December 6, 2021, was not certified for publication in the Official Reports. For good cause it now appears the opinion should be published in the Official Reports, and it is so ordered.

It is also ordered that the opinion filed herein on December 6, 2021, be modified as follows:

2.     The first paragraph on page 17 under Part III, the third sentence states: "Finally, defendant contends the trial court erred in assuming that time records were insufficient to establish a prima facie case of liability."

The sentence should read:

Finally, plaintiff contends the trial court erred in assuming that time records were insufficient to establish a prima facie case of liability.

This modification does not change the judgment.


FOR THE COURT:


_____/s/_____
Blease, Acting P. J.


_____/s/_____
Robie, J.


_____/s/_____
Duarte, J.

EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of San Joaquin County, Jayne C. Lee, Judge.  Affirmed.

Shimoda Law Corp., Galen T. Shimoda and Justin P. Rodriguez for Plaintiff and Appellant.

Rediger Labor Law, Robert L. Rediger, Justin R. Rediger and Arielle M. Rediger for Defendants and Respondents.